Gregory G. Spaulding, Esq. (SBN 106606)
Terry S. Sterling, Esq. (SBN 106379)
SPAULDING McCULLOUGH & TANSIL LLP
90 South E Street, Suite 200
P.O. Box 1867
Santa Rosa, CA  95402
Telephone:     (707) 524-1900
Facsimile:     (707) 524-1906
spaulding@smlaw.com; sterling@smlaw.com

Attorneys for Defendants COUNTY OF SONOMA,
SHERIFF BILL COGBILL and JOSHUA CLAASSEN
(incorrectly sued herein as DEPUTY "CLAUSEN")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO PALOMINO,<br><br>       Plaintiff,<br><br>    vs.<br><br>CALIFORNIA FORENSIC MEDICAL GROUP, DR. TAYLOR FITHIAN, COUNTY OF SONOMA, SHERIFF BILL COGBILL, DEPUTY "CLAUSEN" AND DOES 1-10,<br><br>       Defendants. | Case No.: 11-CV-1329 MEJ<br><br>DECLARATION OF JOSEPH CARUSO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SIGNATURE ATTESTATION<br><br>Date: December 13, 2012<br>Time: 10:00 a.m.<br>Courtroom B, 15th Floor<br><br>Trial Date: July 8, 2013 |

I, Joseph Caruso, declare:

1.     I have been asked to review various records and to provide opinions regarding the Sonoma County Sheriff's Department's management of Mr. Palomino on March 5, 2012.  I have firsthand, personal knowledge of the matters set forth herein and, if called upon to do so, could and would competently testify thereto.

2.     Prior to my retirement in 2011, I was employed by the Office of the Sheriff for Contra Costa County for 28 years.  During that time, I had extensive training and experience in corrections and worked for more than 16 years in positions within the detention division.  At the Martinez Detention Facility, I worked as a deputy, as the head of Bureau Administrative Services, as Facility Commander and as the Captain in charge of operations.  At the West County Detention Facility, I worked as a First Line Supervisor and as a Facility Commander.  During my last five years with the

1  Sheriff's Office, I was Commander in charge of the Custody Services Bureau, which gave me
2  oversight of all correctional facilities in Contra Costa County.
3       3.    I have reviewed various records relating to this matter, including: documents
4  pertaining to plaintiff's incarcerations at the Sonoma County Main Adult Detention Facility
5  ("MADF") from November 20 to 24, 2009 and from January 27, 2010 to May 12, 2010; MADF
6  policies relating to the inmate classification, inmate movement, restraints, use of force, the
7  provision of medical care to inmates, forced cell removals, lockdowns and the SERT team; the
8  MADF Inmate Handbook; Mr. Palomino's medical and mental health charts, training records for
9  Deputy Joshua Claassen and the deposition of plaintiff Julio Palomino.
10       4.    My opinions are based on the following understanding of the events of March 5,
11  2010, which understanding is based on the records I reviewed, including the March 5, 2010 Incident
12  Report prepared by Deputy Joshua Claassen:
13       a.    Plaintiff was incarcerated at the MADF from January 27, 2010 to May 12, 2010 on
14           charges brought under Penal Code §242 (battery), §594(a)(2) (vandalism) and §422
15           (terrorist threat of death or great bodily injury).
16       b.    On March 5, 2010, plaintiff was classified as a level "3" administrative segregation
17           inmate with an Internal Behavior Code of "E."  The status level of "3" indicated that
18           plaintiff needed to be supervised by three Correctional Deputies whenever he was
19           out of his cell, and the Internal Behavior Code of "E" indicated that he had obvious
20           psychiatric symptoms, that he presented a high risk potential for violence toward
21           others, and that he was displaying or had recently displayed violent symptoms
22           indicating a need for maximum supervision and observation.  Based on the Internal
23           Behavior Code of "E," plaintiff was required to wear waist restraints and handcuffs
24           while he was out of his cell.
25       c.    On the day of the incident, plaintiff was removed from his cell to attend a visit.
26           Based on his classification, plaintiff needed to be placed in restraints before he could
27           be taken to the visiting area of the Jail.  Plaintiff refused to cooperate with the
28           deputies when they tried to put on the restraints; he tried to make his stomach larger

DECLARATION OF JOSEPH CARUSO IN SUPPORT OF          Case No. CV 11-0257 EDL
MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1  so the waist restraints could not be properly applied; he tensed his arms; and he
2  refused to hold his hands still so the handcuffs could be properly applied.
3     d. Eventually, after plaintiff's continued resistance made it impossible for the deputies
4  to apply the restraints properly, the visit was cancelled and plaintiff was returned to
5  his cell.  Consistent with standard procedures, plaintiff was returned to his cell with
6  his hands still cuffed behind his back.  A tether (a nylon rope with clips) that was
7  attached to the handcuffs was passed through the food portal to deputies stationed
8  outside of the cell, who held the tether and continued to control plaintiff while the
9  cell door was locked.  Plaintiff was then told to put his cuffed hands through the
10 food portal so the deputies outside of the cell could remove the handcuffs.
11    e. Plaintiff was resistant and uncooperative while the deputies were trying to remove the
12 handcuffs.  He clenched his fist and tried to grab Deputy Claassen's hand, and after the
13 right cuff was removed, plaintiff pulled his right hand through the portal and into the
14 cell in the direction of the sink, creating a safety risk for the deputies.  When plaintiff
15 then started to turn around to face the cell door, Deputy Claassen became concerned
16 that plaintiff might have grabbed a weapon from the sink area, so he placed plaintiff in
17 an "arm bar," a control hold that involves the application of upward pressure on the
18 arm that is extended through the food portal.
19    f. Initially, Deputy Claassen did not apply any pressure to the arm bar; he told plaintiff
20 to stop struggling and ordered him to put his right arm back through the portal.
21 Plaintiff refused and turned toward Deputy Claassen, with his right hand out of view.
22 At the same time, plaintiff pulled on his left arm and twisted his left hand in an
23 attempt to free himself from Deputy Claassen's control.  Deputy Claassen began to
24 apply pressure to the arm bar and he again told plaintiff to stop resisting, to turn
25 around and to put his right arm through the portal.  Again, plaintiff refused and
26 continued to struggle.  Deputy Claassen applied more pressure to the arm bar, pushing
27 the left arm against the upper edge of the portal, and he again told plaintiff to stop
28

3

1  resisting. Plaintiff only stopped struggling after he was injured, at which point the left
2  handcuff was removed.

3  5. Under the circumstances of this case, Deputy Claassen's priorities were to ensure that plaintiff did not get loose, and to remove plaintiff's remaining handcuff.

6. In light of plaintiff's history of assaultive behavior, the charges against him, his classification level and his behavior at the time of the incident, the force applied by Deputy Claassen was not excessive. Deputy Claassen's Incident Report indicates that plaintiff was not only refusing to follow Deputy Claassen's instructions, he was struggling aggressively with Deputy Claassen. Plaintiff was clenching his fist, trying to grab Deputy Claassen's hand, and pulling and twisting his left arm and hand in an effort to get away from the deputy. In addition, as soon as his right handcuff was removed, plaintiff pulled his right hand into his cell and reached toward the sink, possibly to grab something that could be used as a weapon. Plaintiff presented a safety risk and Deputy Claassen had reasonable cause for concern. Accordingly, when plaintiff continued to disregard Deputy Claassen's instructions to stop resisting and to put his right arm through the food portal, it was reasonable for Deputy Claassen to place plaintiff in an "arm bar" control hold.

7. Deputy Claassen did not apply the arm bar hold with excessive force. Initially, he did not apply any pressure to the arm bar; instead, he gave plaintiff a further chance to comply with the instructions to stop resisting and to put his right arm back through the portal. Only after plaintiff continued to resist and to ignore instructions did Deputy Claassen begin to apply pressure to the hold.

8. Waiting for plaintiff to calm down before removing the handcuff would not have been an acceptable alternative. The deputies could not leave plaintiff alone because the left handcuff was attached to a tether held by one of the deputies, and if the deputy had released the tether, plaintiff could have pulled it into his cell and used it as a weapon, either against the deputies or against himself. Once plaintiff had a weapon, under MADF policies, it would have been necessary to call in the Specialized Emergency Response Team to conduct a forced cell removal, a potentially dangerous maneuver that would have required a facility-wide lockdown.

1    I declare under penalty of perjury under the laws of the United States of America that the
2 foregoing is true and correct.
3    Executed this 19th day of October, 2012 at Santa Rosa, California.

*/s/ Joseph Caruso*  
Joseph Caruso

1     <u>SIGNATURE ATTESTATION BY TERRY S. STERLING</u>

2     I, Terry S. Sterling, declare:

3     I am an associate with Spaulding McCullough & Tansil, LLP, attorneys of record for defendants COUNTY OF SONOMA, SHERIFF BILL COGBILL and JOSHUA CLAASSEN (incorrectly sued herein as DEPUTY "CLAUSEN").  I have firsthand, personal knowledge of the matters set forth herein and, if called upon to do so, could and would competently testify thereto.

    I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this efiled document. .

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed this 31st day of October, 2012 at Santa Rosa, California.

    */s/Terry S. Sterling*
    Terry S. Sterling

6

DECLARATION OF JOSEPH CARUSO IN SUPPORT OF     Case No. CV 11-0257 EDL
MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT