Gregory G. Spaulding, Esq. (SBN 106606)
Terry S. Sterling, Esq. (SBN 106379)
SPAULDING McCULLOUGH & TANSIL LLP
90 South E Street, Suite 200
P.O. Box 1867
Santa Rosa, CA  95402
Telephone:     (707) 524-1900
Facsimile:      (707) 524-1906
spaulding@smlaw.com; sterling@smlaw.com

Attorneys for Defendants COUNTY OF SONOMA,
SHERIFF BILL COGBILL and JOSHUA CLAASSEN
(incorrectly sued herein as DEPUTY "CLAUSEN")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO PALOMINO,<br><br>             Plaintiff,<br><br>     vs.<br><br>CALIFORNIA FORENSIC MEDICAL GROUP, DR. TAYLOR FITHIAN, COUNTY OF SONOMA, SHERIFF BILL COGBILL, DEPUTY "CLAUSEN" AND DOES 1-10,<br><br>             Defendants. | Case No.: 11-CV-1329 MEJ<br><br>STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT<br><br>Date: December 13, 2012<br>Time: 10:00 a.m.<br>Courtroom B, 15th Floor<br><br>Trial Date: July 8, 2013 |

Defendants COUNTY OF SONOMA ("County"), SHERIFF BILL COGBILL ("Sheriff Cogbill") and JOSHUA CLAASSEN (incorrectly sued herein as DEPUTY "CLAUSEN") ("Deputy Claassen") hereby submit the following Statement of Undisputed Material Facts in Support of Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment.  By reason of these facts, it is evident that plaintiff JULIO PALOMINO has not established and cannot establish the essential elements of his claim for deprivation of constitutional rights in violation of 42 USC §1983, thus entitling defendants, and each of them, to judgment as a matter of law.

| STATEMENT OF MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 1. Plaintiff was incarcerated at the Sonoma County Main Adult Detention Facility ("MADF") from January 27, 2010 to May 12, 2010 on charges brought under Penal Code §242 | 1.  Declaration of Lt. Patti Bennett ("Bennett Decl."), ¶2. |

1

| | |
|---|---|
| (battery), §594(a)(2) (vandalism) and §422 (terrorist threat of death or great bodily injury). | |
| 2. On March 5, 2010, plaintiff was housed in the mental health unit of the MADF. | 2. Bennett Decl., ¶2. |
| 3. Plaintiff has a mental illness that reveals itself through symptoms that include erratic behavior, unpredictability, delusions accompanied by mood instability, thoughts of reference, severe anxiety and assaultive behavior. | 3. Deposition of Julio Palomino ("Palomino Depo"), 15:5-17:9 (copies of cited pages from the Palomino Depo. are attached to the Declaration of Terry S. Sterling ("Sterling Decl.") as Exhibit A |
| 4. Although plaintiff has been prescribed medications that help control his symptoms, plaintiff stopped taking those medications more than a year before the incident at issue in this case. During his incarceration that began in January 2010, plaintiff had not taken those medications prior to the incident at issue. | 4. Palomino Depo, 11:3-12:22 15:3-16:6. |
| 5. Plaintiff testified that although he is not a violent person by nature, his thought processes are compromised by his mental illness. | 5. Palomino Depo, 16:25-17:13. |
| 6. On March 5, 2010, plaintiff was classified as a level "3" administrative segregation inmate with an Internal Behavior Code of "E." The status level of "3" indicated that plaintiff needed to be supervised by three Correctional Deputies whenever he was out of his cell, and the Internal Behavior Code of "E" indicated that he had obvious psychiatric symptoms, that he presented a high risk potential for violence toward others, and that he was then displaying or had recently displayed violent symptoms indicating a need for maximum supervision and observation. Based on the Internal Behavior Code of "E," plaintiff was required to wear waist restraints and handcuffs while he was out of his cell. | 6. Bennett Decl., ¶3. |
| 7. On March 5, 2010, plaintiff was removed from his cell to attend a visit. Based on his classification, plaintiff needed to be placed in restraints before he could be taken to the visiting area of the Jail. Plaintiff refused to cooperate with the deputies when they tried to put on the restraints; he tried to make his stomach larger so the waist restraints could not be properly applied; he tensed his arms; and he refused to hold his hands still so the handcuffs could be properly applied. Eventually, after plaintiff's continued resistance made it impossible for the deputies to apply the restraints properly, the visit was cancelled and plaintiff was returned to his cell. | 7. Declaration of Deputy Joshua Claassen ("Claassen Decl.") ¶3 and Incident Report prepared by Deputy Claassen ("Incident Report") (Exhibit A to Claassen Decl.). |

2

| | |
|---|---|
| 8. Consistent with standard procedures, plaintiff was returned to his cell with his hands still cuffed behind his back.  A tether (a nylon rope with clips) that was attached to the handcuffs was passed through the food portal to one deputy stationed outside of the cell, who held the tether and continued to control plaintiff while the cell door was locked.  Plaintiff was then told to put his cuffed hands through the food portal so the deputies outside of the cell could remove the handcuffs. | 8.  Claassen Decl., ¶4 and Incident Report. |
| 9. Plaintiff was resistant and uncooperative while the deputies were trying to remove the handcuffs.  He clenched his fist and tried to grab Deputy Claassen's hand, and after the right cuff was removed, plaintiff pulled his right hand through the portal and into the cell in the direction of the sink, creating a safety risk for the deputies.  When plaintiff then started to turn around to face the cell door, Deputy Claassen became concerned that plaintiff might have grabbed a weapon from the sink area, so he placed plaintiff in an "arm bar," a control hold that involves the application of upward pressure on the arm that is extended through the food portal.  Initially, Deputy Claassen did not apply any pressure to the left arm; he told plaintiff to stop struggling and ordered him to put his right arm back through the portal. Plaintiff refused and turned toward Deputy Claassen, with his right hand out of view.  At the same time, plaintiff pulled on his left arm and twisted his left hand in an attempt to free himself from Deputy Claassen's control.  There was a very real danger of allowing plaintiff to free his left hand, with handcuff attached, from Deputy Claassen's control.  Plaintiff would have then had a weapon (the handcuffs and tether) in his cell.  Deputy Claassen began to apply pressure to the arm and he again told plaintiff to stop resisting, to turn around and to put his right arm through the portal.  Again, plaintiff refused and continued to struggle. Deputy Claassen applied more pressure to the left arm, pushing it against the upper edge of the portal, and he again told plaintiff to stop resisting.  Plaintiff only stopped struggling after he was injured, at which point the left handcuff was removed. | 9.  Claassen Decl., ¶5 and Incident Report. |
| 10. After the left handcuff was removed, plaintiff complained of pain in his left elbow. Deputy Claassen called for medical assistance | 10.  Claassen Decl., ¶6 and Incident Report. |

3

| | |
|---|---|
| and a nurse from California Forensic Medical Group ("CFMG") came with ice and medication. | |
| 11. CFMG contracts with the County for the provision of medical care to MADF inmates. | 11. Bennett Decl., ¶6. |
| 12. CFMG arranged for an x-ray of plaintiff's arm, which revealed a fracture of the humerus. CFMG continued to treat plaintiff throughout the remainder of his incarceration, providing treatment at the Jail and referring plaintiff for treatment by medical specialists outside of the Jail. | 12. Docket 31, Declaration of John Levin, M.D. filed in support of CFMG's Motion for Summary Judgment, filed on August 22, 2012, ¶¶4(A) through 4(Z). |
| 13. The Amended Complaint does not allege that Sheriff Cogbill was personally involved in in incident at issue in this case. On the basis of information and belief, plaintiff alleges: (1) that Sheriff Cogbill and the County "ratified and adopted the conduct of Deputy 'Clausen,' with deliberate and gross indifference to the rights of plaintiff;" (2) that Sheriff Cogbill and the County "had prior notice and knowledge of other incidents involving the use of excessive force and the unjustified use of force by Deputy 'Clausen' and other Deputies of the Sonoma County Sheriff's Department;" (3) that Sheriff Cogbill and the County "failed to adequately train, supervise and discipline Deputies for the Sonoma County Sheriff's Department with respect to encounters with prisoners displaying acute symptoms and with respect to the use of force;" (4) that Sheriff Cogbill and the County "had actual and/or constructive knowledge that the failure to adequately train, supervise and discipline deputies regarding encounters with prisoners displaying symptoms of acute mental illness created a substantial risk of injury to such prisoners and to the Deputies themselves, and of violations of personal and constitutional rights;" and (5) that defendants were deliberately indifferent to the substantial risk of violating prisoners' rights." | 13. Docket 14, Amended Complaint of July 4, 2011 ("Amended Complaint"), ¶¶14, 15 and 16. |
| 14. The County propounded interrogatories on plaintiff, asking him to state all facts that support each of the allegations set forth above; to identify all persons who have knowledge of those facts; and to identify all documents that support those facts. In response to each of those Interrogatories, plaintiff responded "None," indicating that he is not aware of any facts, witnesses or evidence which support the allegations against Sheriff Cogbill. | 14. Sterling Decl., ¶3; Special Interrogatories to Plaintiff (Set One) propounded by County of Sonoma ("Interrogatories") (Exhibit B to Sterling Decl.); Plaintiff's Responses to Interrogatories ("Responses") (Exhibit B to Sterling Decl.). |

4

| | | |
|---|---|---|
| | 15. Defendants' correctional expert, Joseph Caruso, has opined that given plaintiff's history of assaultive behavior, the charges against him, his classification level and his behavior at the time of the incident, the force applied by Deputy Claassen was not excessive. | 15. Declaration of Joseph Caruso ("Caruso Decl."), ¶6. |
| | 16. Under the circumstances of this case, Deputy Claassen's priorities were to ensure that plaintiff did not get loose, and to remove plaintiff's remaining handcuff. In light of plaintiff's history and his behavior at the time of the incident, plaintiff presented a safety risk and Deputy Claassen had reasonable cause for concern. Accordingly, when plaintiff continued to disregard Deputy Claassen's instructions to stop resisting and to put his right arm through the food portal, it was reasonable for Deputy Claassen to place plaintiff in an "arm bar" control hold. | 16. Caruso Decl., ¶¶5 and 6. |
| | 17. Deputy Claassen did not apply the arm bar control hold with excessive force. Initially, he did not apply pressure to the arm, but gave plaintiff a further chance to comply with the instructions to stop resisting and to put his right arm back through the portal. Only after plaintiff continued to resist and to ignore instructions did Deputy Claassen begin to apply pressure to the hold. | 17. Caruso Decl., ¶7. |
| | 18. Waiting for plaintiff to calm down before removing the handcuff would not have been an acceptable alternative to the use of a control hold. The deputies could not leave plaintiff alone because the left handcuff was attached to a tether held by one of the deputies, and if the deputy had released the tether, plaintiff could have pulled it into his cell and used the handcuffs and tether as a weapon, either against the deputies or against himself. | 18. Claassen Decl., ¶8; Caruso Decl., ¶8. |
| | 19. Once plaintiff had a weapon in his cell, under MADF policies it would have been necessary to call in the Specialized Emergency Response Team to conduct a forced cell removal, a potentially dangerous maneuver that would have required a facility-wide lockdown. | 19. Bennett Decl., ¶¶4-5; Claassen Decl., ¶8. |
| | 20. The Interrogatories asked plaintiff to identify all official County policies or practices, and all omissions amounting to either an official County policy or practice, that plaintiff contends deprived him of his constitutional rights while he was an inmate at the MADF. In response, the only policy, practice or omission identified by | 20. Interrogatories Nos. 23 through 26; Responses to Interrogatories Nos. 23 through 26. |

5

STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF  Case No.: 11-CV-1329 MEJ
MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| plaintiff is an alleged "policy [or practice] to house mentally ill person [sic] in MADF" (alternatively described as the County's "policy [or practice] to not house mentally ill person [sic] in a mental health facility"). | |
| 21. The Amended Complaint does not allege a claim that it is unconstitutional for any mentally ill person to be housed in a jail instead of a mental health facility, nor does it allege a claim that plaintiff's constitutional rights were violated by the decision to house him at the MADF. | 21. Amended Complaint. |
| 22. In an email to defendants' attorney, plaintiff's attorney expressly stated that "[plaintiff's] mental health is not an issue in this litigation." | 22. January 5, 2012 email from Evan Livingstone to Terry Sterling (Exhibit D to Sterling Decl.) |
| 23. In his Responses to the Interrogatories, plaintiff conceded that he is not aware of any facts, witnesses or evidence that support the allegation that the County ratified and adopted the conduct of Deputy Claassen, nor was he able to identify any officials with final policy-making authority who approved any unconstitutional acts toward him by County employees. | 23. Responses to Interrogatories Nos. 1, 2, 3 and 29. |

DATED: October 31, 2012

SPAULDING McCULLOUGH & TANSIL LLP
Attorneys for Defendants COUNTY OF SONOMA, SHERIFF BILL COGBILL and JOSHUA CLAASSEN (incorrectly sued herein as DEPUTY "CLAUSEN")


By: */s/Terry S. Sterling*
    Terry S. Sterling

6

STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT     Case No.: 11-CV-1329 MEJ