UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| JULIO PALOMINO,<br><br>               Plaintiff,<br>   v.<br>CALIFORNIA FORENSIC MEDICAL GROUP, et al.,<br><br>               Defendants.<br>_____/ | No. C 11-01329 MEJ<br><br>**ORDER RE: MOTION FOR SUMMARY JUDGMENT (Dkt. No. 41)** |

### INTRODUCTION

Plaintiff Julio Palomino (Plaintiff) brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights by Defendants County of Sonoma (County), County Sheriff Bill Cogbill, County Deputy Sheriff Joshua Claassen, California Forensic Medical Group (CFMG), and Taylor Fithin, M.D.[1] Sec. Am. Compl. (SAC), Dkt. No. 14. Plaintiff alleges that he had his left arm broken while in custody in the Sonoma County Jail. *Id.* ¶ 5. Defendants County, Cogbill, and Claassen (collectively, the County Defendants) now move for an order granting summary judgment in their favor on Plaintiff's SAC.[2] Plaintiff has filed an Opposition, to which

---

[1] On October 10, 2012, the Court granted CFMG and Dr. Fithin's summary judgment motion. Dkt. No. 37. Thus, the only remaining defendants are the County, Sheriff Cogbill, and Deputy Claassen

[2] On December 30, 2011, the Court granted Plaintiff's request to file a third amended complaint and ordered Plaintiff to e-file the amended complaint. Dkt. No. 28. Plaintiff thereafter failed to file any third amended complaint. Thus, as Defendants now move for summary judgment based upon Plaintiff's SAC and Plaintiff did not object, the SAC is the operative complaint in this case.

Defendants have filed a Reply. Dkt. Nos. 51 and 54. The Court finds this matter suitable for disposition without oral argument and hereby VACATES the December 20, 2012 hearing. Civil L.R. 7-1(b). After carefully considering the parties' briefs and the controlling legal authorities, the Court GRANTS Defendants' Motion for the reasons set forth below.

## BACKGROUND

Plaintiff was incarcerated at the Sonoma County Main Adult Detention Facility ("MADF") from January 27, 2010 to May 12, 2010, on charges brought under California Penal Code § 242 (battery), § 594(a)(2) (vandalism) and § 422 (terrorist threat of death or great bodily injury). Joint. Statement of Undisputed Facts (JSUF) ¶ 1, Dkt. No. 52. On March 5, 2010, Plaintiff was housed in the mental health unit of the MADF. *Id.* ¶ 2. At his deposition, Plaintiff testified that he has a mental illness that reveals itself through symptoms that include erratic behavior, unpredictability, delusions accompanied by mood instability, thoughts of reference, severe anxiety, and assaultive behavior. *Id.* ¶ 3. He testified that although he is not a violent person by nature, his thought processes are compromised by his mental illness. *Id.* ¶ 5. Plaintiff also testified that although he has been prescribed medications that help control his symptoms, he stopped taking those medications more than a year before the incident at issue in this case. *Id.* ¶ 4. Thus, during his incarceration that began in January 2010, Plaintiff had not taken those medications prior to the incident at issue. *Id.*

On the date at issue in this case, March 5, 2010, Plaintiff was classified as a level "3" administrative segregation inmate with an Internal Behavior Code of "E." *Id.* ¶ 6. The status level of "3" indicated that Plaintiff needed to be supervised by three Correctional Deputies whenever he was out of his cell, and the Internal Behavior Code of "E" indicated that he had obvious psychiatric symptoms, that he presented a high risk potential for violence toward others, and that he was then displaying or had recently displayed violent symptoms indicating a need for maximum supervision and observation. *Id.* Based on the Internal Behavior Code of "E," Plaintiff was required to wear waist restraints and handcuffs while he was out of his cell. *Id.*

The Incident Report prepared by Deputy Claassen indicates that on March 5, 2010, Plaintiff was removed from his cell to attend a visit. *Id.* ¶ 7. Based on his classification, Plaintiff needed to be

placed in restraints before he could be taken to the visiting area of the Jail. *Id.* Plaintiff refused to cooperate with the deputies when they tried to put on the restraints – he tried to make his stomach larger so the waist restraints could not be properly applied, he tensed his arms, and he refused to hold his hands still so the handcuffs could be properly applied. *Id.* Eventually, after Plaintiff's continued resistance made it impossible for the deputies to apply the restraints properly, the visit was cancelled and Plaintiff was returned to his cell. *Id.*

Consistent with standard procedures, Plaintiff was returned to his cell with his hands still cuffed behind his back. *Id.* ¶ 8. A tether (a nylon rope with clips) that was attached to the handcuffs was passed through the food portal to one deputy stationed outside of the cell, who held the tether and continued to control Plaintiff while the cell door was locked. *Id.* Plaintiff was then told to put his cuffed hands through the food portal so the deputies outside of the cell could remove the handcuffs. *Id.*

The Incident Report states that Plaintiff was resistant and uncooperative while the deputies were trying to remove the handcuffs – he clenched his fist and tried to grab Deputy Claassen's hand, and after the right cuff was removed, Plaintiff pulled his right hand through the portal and into the cell in the direction of the sink, creating a safety risk for the deputies. *Id.* ¶ 9. When Plaintiff then started to turn around to face the cell door, Deputy Claassen became concerned that Plaintiff might have grabbed a weapon from the sink area, so he placed Plaintiff in an "arm bar," a control hold that involves the application of upward pressure on the arm that is extended through the food portal. *Id.* Initially, Deputy Claassen did not apply any pressure to the left arm; instead, he told Plaintiff to stop struggling and ordered him to put his right arm back through the portal. *Id.* Plaintiff refused and turned toward Deputy Claassen, with his right hand out of view. *Id.* At the same time, Plaintiff pulled on his left arm and twisted his left hand in an attempt to free himself from Deputy Claassen's control. *Id.* Deputy Claassen began to apply pressure to the arm and he again told Plaintiff to stop resisting, to turn around and to put his right arm through the portal. *Id.* Plaintiff again refused and continued to struggle; Deputy Claassen applied more pressure to the left arm, pushing it against the upper edge of the portal, and he again told Plaintiff to stop resisting. *Id.* Plaintiff only stopped

struggling after he was injured, at which point the left handcuff was removed. *Id.*

The Incident Report indicates that after the left handcuff was removed, Plaintiff complained of pain in his left elbow. *Id.* ¶ 11. Deputy Claassen called for medical assistance and a nurse from CFMG came with ice and medication. *Id.* CFMG contracts with the County for the provision of medical care to MADF inmates. *Id.* ¶ 12.

Plaintiff does not agree with the description of events set forth in the Incident Report. *Id.* ¶ 10. According to Plaintiff, Deputy Claassen returned Plaintiff to his cell and locked the cell door, after which he ordered him to place his handcuffed arms through the food portal in the door so that his arms were sticking out into the hallway. Opp'n at 1, Dkt. No. 51. Plaintiff states that Deputy Claassen removed the handcuffs from his right hand and he pulled his right arm into the cell, at which time he felt a sharp blow applied to the elbow region of his left arm, which was still sticking through the food portal into the hallway. *Id.* Plaintiff states that his left arm was pulled and twisted with great force by the tether which was still attached to his arm. *Id.* Plaintiff states that he complained loudly that his left arm was in great pain, and it was subsequently found to be broken. *Id.*

CFMG arranged for an x-ray of Plaintiff's arm, which revealed a fracture of the humerus. JSUF ¶ 13. CFMG continued to treat Plaintiff throughout the remainder of his incarceration, providing treatment at the Jail and referring Plaintiff for treatment by medical specialists outside of the Jail. *Id.*

The parties agree that waiting for Plaintiff to calm down before removing the handcuff would not have been an acceptable alternative to the use of a control hold. *Id.* ¶ 14. The deputies could not leave Plaintiff alone because the left handcuff was attached to a tether held by one of the deputies, and if the deputy had released the tether, Plaintiff could have pulled it into his cell and used the handcuffs and tether as a weapon, either against the deputies or against himself. *Id.* Once Plaintiff had a weapon in his cell, under MADF policies it would have been necessary to call in the Specialized Emergency Response Team to conduct a forced cell removal, a potentially dangerous maneuver that would have required a facility-wide lockdown. *Id.*

Plaintiff filed his initial Complaint on March 18, 2011. Dkt. No. 1. He subsequently

4

amended it on April 6, 2011, and July 14, 2011. Dkt. Nos. 6, 14. In his SAC, Plaintiff alleges a single claim against the County Defendants for violation of 42 U.S.C. § 1983. The SAC does not clearly explain Plaintiff's theory of liability against each of the County Defendants, but the only facts alleged as a basis for the claims against the County Defendants are the facts pertaining to Deputy Claassen's alleged use of excessive force.

The County Defendants filed the present Motion for Summary Judgment on October 31, 2012. Dkt. No. 41. In their Motion, the County Defendants argue that Plaintiff cannot establish a claim against the individual County Defendants and, even if he could, they are entitled to qualified immunity. Mot. at 7, 14. The County Defendants further argue that Plaintiff cannot establish a claim against the County because there is no evidence that Plaintiff's alleged constitutional injury resulted from the implementation of an official policy or practice, or from an omission or policy of inaction by the County. *Id.* at 16.

## **LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate only when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears both the initial burden of production as well as the ultimate burden of persuasion to demonstrate that no genuine dispute of material fact remains. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations and citations omitted). On summary judgment, courts are required to view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**DISCUSSION**

**A.     The County and Sheriff Cogbill**

As a preliminary matter, Plaintiff states in his Opposition that he does not oppose the County Defendants' Motion as it applies to the County and Sheriff Cogbill. Opp'n at 1. Accordingly, the County Defendants' Motion is hereby GRANTED as to the County and Sheriff Cogbill.

**B.     Deputy Claassen**

As to Deputy Claassen, the County Defendants argue that the excessive force claim is without merit because Claassen's conduct was reasonable based on the situation presented at the time, regardless of how his actions might appear in hindsight. Mot. at 11. In response, Plaintiff argues that Deputy Claassen used excessive force because he struck him with great force in the region of his left elbow, causing a painful fracture to his left arm. Opp'n at 3; Palomino Decl. at 1-2, Dkt. No. 51. Plaintiff argues that the Court must believe his statement at the summary judgment stage, as it is presented in his sworn declaration. Opp'n at 3-4.

1.     <u>Excessive Force Claim under 42 U.S.C. § 1983</u>

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Because Plaintiff was incarcerated at the time of the incident, his excessive force case is governed by the Eighth Amendment's Cruel and Unusual Punishment clause. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Under the Eighth Amendment, a prisoner has the right to be free from cruel and unusual punishment, including physical abuse by guards. *Reyes v. Kirkland*, 2009 WL 1690732, at *1 (N.D. Cal. June 15, 2009).

A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, and (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 297-98 (1991)); *LeMaire v. Maass*, 12 F.3d 1444, 1451 (9th Cir. 1993). When prison officials stand accused of using excessive force in

violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Whitley*, 475 U.S. at 320-21 (1986); *Jeffers v. Gomez*, 267 F.3d 895, 912-13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot, but applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent the riot). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate: (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the extent of any injury inflicted, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7. In weighing these factors, "[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard . . . the case should not go to the jury." *Whitley*, 475 U.S. at 322.

    a. *Extent of Injury*

Here, there is no dispute that Plaintiff was injured as a result of the incident. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Hudson*, 503 U.S. at 7. Accordingly, the Court finds that this factor weighs in Plaintiff's favor. However, this does not end the Eighth Amendment inquiry: whether the alleged wrongdoing is objectively "harmful enough" to establish a constitutional violation is contextual and responsive to contemporary standards of decency. *Id.* at 8 (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).

    b. *Need for Force*

The Ninth Circuit has held that "the force that was applied must be balanced against the need for that force: it is the need for force which is at the heart of the [excessive force determination]." *Alexander v. City and Cnty. of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994). Where there is no

7

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  need for force, any force used is objectively unreasonable for constitutional purposes. *P.B. v. Koch*,
2  96 F.3d 1298, 1303-04 & n. 4 (9th Cir. 1996).

3        Here, there was a need for force because, even viewing inferences in the light most favorable
4  to Plaintiff, the facts show that Deputy Claassen exerted force to restrain Plaintiff, not to maliciously
5  and sadistically inflict pain. It is undisputed that Plaintiff pulled his right arm into the cell after
6  Claassen removed the handcuffs from his right hand. Palomino Decl. at 1. It is also undisputed that
7  the deputies could not leave Plaintiff alone because the left handcuff was attached to a tether held by
8  one of the deputies, and if the deputy had released the tether, Plaintiff could have pulled it into his
9  cell and used the handcuffs and tether as a weapon, either against the deputies or against himself.
10 JSUF ¶ 14. Further, it is undisputed that waiting for Plaintiff to calm down before removing the
11 handcuff would not have been an acceptable alternative to the use of a control hold. *Id.* Once
12 Plaintiff had a weapon in his cell, under MADF policies it would have been necessary to call in the
13 Specialized Emergency Response Team to conduct a forced cell removal, a potentially dangerous
14 maneuver that would have required a facility-wide lockdown. *Id.* ¶ 15. Thus, the facts undisputed by
15 Plaintiff show that Claassen exerted force to restrain Plaintiff, not to maliciously inflict pain.

16       In response to the County Defendants' argument, Plaintiff attempts to create a genuine issue
17 of material fact by claiming in his Declaration that Deputy Claassen broke his arm for no apparent
18 reason. Opp'n at 5; Palomino Decl. at 1. Plaintiff's Declaration may be considered as evidence in
19 evaluating Defendants' motion for summary judgment. *Schroeder v. McDonald*, 55 F.3d 454, 460
20 (1995). A declaration is "cognizable to establish a genuine issue of material fact so long as [it]
21 state[s] facts based on personal knowledge and is not too conclusory." *Rodriguez v. Airborne*
22 *Express*, 265 F.3d 890, 902 (9th Cir. 2001). However, Plaintiff's argument fails because his
23 allegation that Claassen applied such force for no reason is not corroborated by any other testimony
24 or other persuasive evidence. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.
25 2002) ("this court has refused to find a 'genuine issue' where the only evidence presented is
26 'uncorroborated and self-serving' testimony") (citations omitted); *Wilkins v. Ramirez*, 455 F. Supp.
27 2d 1080, 1091-92 (S.D. Cal. 2006) (finding no evidence to demonstrate an issue of material fact as to
28

1 the need for force where the only evidence provided by the plaintiff was a self-serving declaration,
2 but the defendants submitted incident reports that all consistently stated that the plaintiff was
3 resisting). Here, there is no evidence supporting Plaintiff's version of the events in his Opposition
4 and Declaration. In contrast, the County Defendants have submitted the incident report that states
5 that Plaintiff was resisting Claassen's attempt to restrain him. Claassen Decl., Ex. A, Dkt. No. 45;
6 JSUF ¶ 9. Deputy Claassen's Incident Report indicates that Plaintiff was refusing to obey his
7 instructions, resisting his efforts to remove the handcuffs, trying to grab his hand and pulling his own
8 uncuffed hand into his cell in a way that suggested he might be reaching for a weapon. JSUF ¶ 9.
9 Thus, Plaintiff has not offered evidence to demonstrate that there is an issue of material fact as to the
10 need for force, and the Court finds that this factor weighs in favor of Claassen.

     *c.*  *Relationship Between Need for Force & Force Used*

12   "Whether the disturbance is a riot or a lesser disruption, correction officers must balance the
13 need to 'maintain or restore discipline' through force against the risk of injury to inmates." *Hudson*,
14 503 U.S. at 6. In analyzing the relationship between the need for force and the force used, the
15 *Whitley* Court emphasized that simple overreaction by an officer is not enough to establish an Eighth
16 Amendment violation:

> [i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock. The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.

22 475 U.S. at 319. Thus, "under the Eighth Amendment, we look for malicious and sadistic force, not
23 merely objectively unreasonable force." *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002).
24   In his Opposition, Plaintiff argues that if the alleged blow was strong enough to break his arm,
25 then Claassen necessarily acted maliciously and sadistically for the very purpose of causing harm.
26 Opp'n at 5. However, other than Plaintiff's self-serving Declaration, there is no evidence of
27 "obduracy and wantonness." In contrast, the Incident Report states that Plaintiff was resistant and

9

uncooperative while the deputies were trying to remove the handcuffs – he clenched his fist and tried to grab Deputy Claassen's hand, and after the right cuff was removed, Plaintiff pulled his right hand through the portal and into the cell in the direction of the sink, creating a safety risk for the deputies. JSUF ¶ 9. When Plaintiff then started to turn around to face the cell door, Deputy Claassen became concerned that Plaintiff might have grabbed a weapon from the sink area, so he placed Plaintiff in an arm bar hold through the food portal. *Id.* Initially, Deputy Claassen did not apply any pressure to the left arm, but after Plaintiff refused and attempt to free himself from Deputy Claassen's control, Claassen began to apply pressure to the arm. Plaintiff only stopped struggling after he was injured, at which point the left handcuff was removed. *Id.*

Thus, Plaintiff's allegation of excessive force, on its own, is not enough to establish an Eighth Amendment violation. *Clement*, 298 F.3d at 903; *see also Wilkins*, 455 F. Supp. 2d at 1093-94 (finding no genuine issue of material fact where only evidence in the plaintiff's favor was self-serving declaration and statement from a staff member that was not based on personal knowledge). Rather, to establish an Eighth Amendment violation, the force used must have been malicious and sadistic for the very purpose of causing harm. *Id.* Here, there is no evidence in the record that Claassen asserted force for the purpose of causing harm.

Finally, the need for force and force used must be viewed in light of the fact that it is undisputed that Plaintiff was classified as a level "3" administrative segregation inmate with an Internal Behavior Code of "E." JSUF ¶ 6. As stated above, the status level of "3" indicated that Plaintiff needed to be supervised by three Correctional Deputies whenever he was out of his cell, and the Internal Behavior Code of "E" indicated that he had obvious psychiatric symptoms, that he presented a high risk potential for violence toward others, and that he was then displaying or had recently displayed violent symptoms indicating a need for maximum supervision and observation. *Id.* Based on the Internal Behavior Code of "E," Plaintiff was required to wear waist restraints and handcuffs while he was out of his cell. *Id.*

Based on these facts, the Court finds that this factor weighs in favor of Deputy Claassen.

### d. The Threat Reasonably Perceived by Prison Officials

Another relevant inquiry for determining whether an Eighth Amendment excessive force violation occurred is "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them." *Whitley*, 475 U.S. at 321. The *Whitley* Court cautioned that in weighing this factor, courts should be mindful that "in making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used." *Id.* at 320. In addition, "[d]espite the weight of these competing concerns, corrections officers must make their decisions in haste, under pressure, and frequently without the luxury of a second chance." *Hudson*, 503 U.S. at 6 (citing *Whitley*, 475 U.S. at 320).

In his Opposition, Plaintiff argues that Deputy Claassen could not have perceived a threat because he was securely locked behind his cell door. Opp'n at 5. However, the undisputed evidence indicates that after the right cuff was removed, Plaintiff pulled his right hand through the portal and into the cell. Palomino Decl. at 1. Deputy Claassen became concerned that Plaintiff might have grabbed a weapon from the sink area, so he placed Plaintiff in the arm bar control hold. JSUF ¶ 9; Claassen Decl. ¶ 5. It is also undisputed that waiting for Plaintiff to calm down before removing the handcuff would not have been an acceptable alternative to the use of a control hold because the deputies could not leave him alone, as the left handcuff was attached to a tether held by one of the deputies, and if the deputy had released the tether, Plaintiff could have pulled it into his cell and used the handcuffs and tether as a weapon, either against the deputies or against himself. JSUF ¶ 14. Once Plaintiff had a weapon in his cell, under MADF policies it would have been necessary to conduct a potentially dangerous forced cell removal. *Id.* ¶ 15.

Further, Plaintiff himself testified that he has a mental illness that reveals itself through symptoms that include erratic behavior, unpredictability, delusions accompanied by mood instability, thoughts of reference, severe anxiety and assaultive behavior. *Id.* ¶ 3. Deputy Claassen was aware that Plaintiff was classified as a level "3" administrative segregation inmate with an Internal Behavior

11

Code of "E." *Id.* ¶ 6 ; Claassen Decl. ¶ 3. Claassen knew that because of his classification, Plaintiff was required to wear waist restraints and handcuffs while he was out of his cell. Claassen Decl. ¶ 3. Thus, the situation was potentially dangerous to Deputy Claassen and the prison as a whole. Therefore, the Court finds that this factor weighs in favor of Deputy Claassen because he reasonably perceived a threat to prison security and safety.

### *e. Efforts to Temper Force*

As to Deputy Claassen's efforts to temper the force he used against Plaintiff, the evidence before the Court indicates that Deputy Claassen only increased the amount of force he used in response to Plaintiff's resistance. JSUF ¶ 9. The only evidence contradicting this is Plaintiff's self-serving Declaration which, as discussed above, is not enough to create a genuine issue of material fact. *Villiarimo*, 281 F.3d at 1061 ("this court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony"); *Wilkins*, 455 F. Supp. 2d at 1091-92. Thus, the Court FINDS this factor weighs in Deputy Claassen's favor.

### *f. Conclusion*

In conclusion, four out of five of the *Hudson* factors weigh in Deputy Claassen's favor. Thus, the evidence submitted and the facts taken in the light most favorable to Plaintiff show that Claassen did not act maliciously and sadistically for the purpose of causing Plaintiff harm. *See Wilkins*, 455 F. Supp. 2d at 1096 (finding that prison official did not act maliciously or sadistically where, as here, the only factor in the plaintiff's favor was the extent of injury). For the reasons set forth above, the Court GRANTS Deputy Claassen's Motion for Summary Judgment as to Plaintiff's excessive force claim.

### 2. Qualified Immunity

Even if the Court were to find that Plaintiff raised a genuine dispute of material fact, the County Defendants have raised qualified immunity as an affirmative defense. Mot. at 14. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson*

1 *v. Callahan*, 555 U.S. 223, 224 (2009). In general, qualified immunity protects "all but the plainly
2 incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).
3 To determine whether an official is entitled to qualified immunity, the Court must decide whether the
4 facts alleged show the official's conduct violated a constitutional right and, if so, whether it would be
5 clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier v.*
6 *Katz*, 533 U.S. 194, 201 (2001). The first prong is a threshold question; "if no constitutional right
7 would have been violated were the allegations established, there is no necessity for further inquiries
8 concerning qualified immunity." *Id.*

9 Here, as discussed above, the Court finds that Plaintiff failed to establish an excessive force
10 claim under the Eighth Amendment. Thus, the Court need not move to the second step of
11 determining whether the constitutional rights in question were clearly established. *See Cnty. of*
12 *Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998). However, even assuming Plaintiff had
13 established an Eighth Amendment claim, the Court finds that Plaintiff's claim fails on the second
14 prong.

15 If a violation can be made out, the Court must determine if that right was "clearly established"
16 at the time of the violation. *Saucier*, 533 U.S. at 201. This inquiry "must be undertaken in light of
17 the specific context of the case, not as a broad general proposition." *Id.* "[T]he right the official is
18 alleged to have violated must have been 'clearly established' in a more particularized, and hence
19 more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official
20 would understand that what he is doing violates that right." *Id.* at 202 (internal citation and
21 quotations omitted). Even if the plaintiff has alleged a violation of a clearly established right, the
22 government official is nevertheless entitled to qualified immunity if he could have "reasonably but
23 mistakenly believed that his . . . conduct did not violate the right." *Jackson v. City of Bremerton*, 268
24 F.3d 646, 651 (9th Cir. 2001); *Saucier*, 533 U.S. at 205. The qualified immunity inquiry is
25 deferential to the government official: "The scenario may look different when gauged against the
26 '20/20 vision of hindsight,' but [a court] must look at the situation as a reasonable officer in [the
27 deputy's] position could have perceived it." *Marquez v. Gutierrez*, 322 F.3d 689, 693 (9th Cir.
28

13

2003).

Here, even if Deputy Claassen's use of an arm bar control hold was found to violate Plaintiff's constitutional rights, the Court finds that it was not a clearly established violation. As discussed above, the undisputed evidence indicates that after the right cuff was removed, Plaintiff pulled his right hand through the portal and into the cell. Palomino Decl. at 1. It is also undisputed that the deputies could not leave Plaintiff alone because the left handcuff was attached to a tether held by one of the deputies, and if the deputy had released the tether, Plaintiff could have pulled it into his cell and used the handcuffs and tether as a weapon, either against the deputies or against himself. JSUF ¶ 14. Deputy Claassen states that he became concerned that Plaintiff might have grabbed a weapon from the sink area, so he placed Plaintiff in the arm bar control hold. *Id.* ¶ 9; Claassen Decl. 5.

Further, it is undisputed that waiting for Plaintiff to calm down before removing the handcuff would not have been an acceptable alternative to the use of a control hold because the deputies could not leave him alone as the left handcuff was attached to a tether held by one of the deputies, and if the deputy had released the tether, Plaintiff could have pulled it into his cell and used the handcuffs and tether as a weapon, either against the deputies or against himself. JSUF 14. Once Plaintiff had a weapon in his cell, under MADF policies it would have been necessary to conduct a forced cell removal, a potentially dangerous maneuver that would have required a facility-wide lockdown. *Id.* ¶ 15.

Further, Plaintiff himself testified that he has a mental illness that reveals itself through symptoms that include erratic behavior, unpredictability, delusions accompanied by mood instability, thoughts of reference, severe anxiety and assaultive behavior. *Id.* ¶ 3. Deputy Claassen was aware that Plaintiff was classified as a level "3" administrative segregation inmate with an Internal Behavior Code of "E." *Id.* ¶ 6 ; Claassen Decl. 3. Claassen knew that because of his classification, Plaintiff was required to wear waist restraints and handcuffs while he was out of his cell. Claassen Decl. ¶ 3. Thus, even if Deputy Claassen's application of the handcuffs amounted to excessive force, it was a reasonable mistake in light of the information available to him. Deputy Claassen therefore is entitled

14

to qualified immunity as a matter of law.

## CONCLUSION

For the foregoing reasons, the County Defendants' Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: December 10, 2012

Maria-Elena James
Chief United States Magistrate Judge